## BYRD ET AL. *vs.* BROWN ET AL.

The legislature possesses no power to authorize a circuit court to readjudicate or revise its own judgment, pronounced at a previous term.

By the constitution, this court possesses the exclusive power to revise and annul the judgments and decrees of the circuit courts.

The inferior courts are invested principally with original jurisdiction over the subject matters assigned to them—while this court has appellant jurisdiction only, except in few instances expressly directed, co-extensive with the State.

The original cognizance of almost every conceivable case which can possibly arise, is by the constitution, vested in some one of the inferior tribunals—and this court has the corresponding appellant power.

When a case is readjudicated, it must be in some tribunal superior to the one which first determined it.

The legislature possesses no power to impair or divest the jurisdiction of this court; and there,being no intermediate tribunal between the circuit and this court, a case determined there is conclusive upon the court and parties, and can never be annulled except in this court.

The authority of this court extends to every case, upon which an inferior tribunal has pronounced judgment.

That portion of the 1st section of the "act concerning judgments on delivery bonds," approved 7th January, 1843, which authorizes a circuit court to readjudicate questions of law previously decided by it, and to recall and revoke its judgment pronounced, is in conflict with the 6th article of the constitution of this State, and void.

This court will not look beyond the cause embraced by the writ of error: if aught else is sent up by the transcript, it is improvidently placed in the record, and will not be here noticed, and in fact forms no part of the record.

MOTION for judgment, under "act concerning judgments on delivery bonds," approved 17th January, 1843, determined in Pulaski circuit court, in July, 1843, before the Hon. JOHN J. CLENDENIN, one of the circuit judges.

The defendants, as judgment creditors of the plaintiffs in error, appeared in the circuit court, on the 21st day of June, 1843, and filed therein a motion in writing, whereby they set forth "that a judgment was obtained by motion upon a forfeited delivery bond, against the said defendants, at the March term, A. D. 1841, of the Pulaski circuit court, which judgment, under the decision of the supreme court this State, is erroneous and liable to be reversed," and thereupon moved the court "to recall and enter judgment of revocatur upon said judgment." And also, "for judgment against said defendants upon said delivery bond, according to the form of the statute in such case made and provided;" both of which motions the court entertained, and on the 5th of July, following, proceeded to adjudge that the judgment pronounced in this case, at the March term, 1841, of said court, "be revoked, recalled and set aside," and thereupon, after reciting facts as matters appearing from an inspection of the record and papers in the case, entered up another judgment upon said delivery bond, against the plaintiffs in error; to reverse which, they have brought the case before this court by writ of error.

There were four cases depending on the same point, and were argued by

*Fowler,* and *Ashley & Watkins,* for plaintiffs. The question involved in this case is, can the legislature by a retrospective statute, change

the obligation of a delivery bond by adding to it constructive notice, a feature which did not by law attach to it when executed? If there was originally, no obligation on Thorn, to appear in court, could the legislature, by a subsequent act, authorize judgment against him, without the service of process, or his voluntary appearance. *Rev. Stat. p.* 619, *sec.* 1. We understand it to be a fundamental principle, that in order to render a valid judgment, the court must have jurisdiction over the subject matter, and over the person. The circuit court in these cases, had no such jurisdiction, because there was no declaration, petition, or statement in writing, or case presented, for the adjudication of the court. The judgment revoked, had passed several terms previously, and the power over it had ceased, and because there was no service of process upon or appearance by the defendants. Another grave question presented by the record in the case is, whether the act of the legislature does not indirectly deprive this court of its constitutional appellate jurisdiction. The power to reverse a judgment of the circuit court for error in law, we understand to belong exclusively to this court. We present a case: where the first notice that the defendant had of the pendency of a suit against him, was the levy of the execution upon his droperty.

*Trapnall & Cocke*, contra. That a law authorizing judgment to be taken without notice to defendant, would be arbitrary and ungust, is beyond all controversy; but if such law was enacted, and not in violation of the constitution, upon what ground its validity could be questioned, it is difficult to conceive, unless we go back to the unfathomed source of the " immutable principles of eternal justice." If these cases are to be thrown out on that shoreless ocean, this case certainly never can be brought into any port by means of precedents or authority.

In Vermont and Connecticut, a divorce is authorized under particular circumstances, without actual or constructive notice, and the decrees are valid in thuse states, although the supreme court of Massachusetts, in *Barber vs. Root,* 10 *Mass.,* and the supreme court of New York, in *Kellum vs. Woodworth,* 5 *J. R.* 41. *Rawling vs. Byrd's ex'r.* 13 *J. R.* 205. *Berdon vs. Fitch,* 15 *J. R.* 142, refused to enforce them. In the preceding cases, as well as *Williams vs. Preston,* 3 *J.*

*J. Marsh.* 608, and *Buchanner vs. Rucker,* 9 *East.* 144, it seems that such judgments would be binding in the States where they are recorded.

In the case of surety paying the debt, he is by the law of 1817, in Tennessee, entitled to judgment on motion without notice. *Turner's executor vs. Green's administrator,* 4 *Haywood,* 235. *Holman's Digest,* 505. Upon an appeal and affirmation of the judgment on motion without notice, judgment is entered against securities. *Jones vs. Parsons & Blair,* 2 *Yerger,* 321. If a law be unreasonable or unjust, still it must be enforced. See 1 *Black.* 41, 91, and *notes of Christian.* The only remedy is by repeal. *Christian's note,* 40. *Bacon* says the judges will strain hard rather than hold a statute void. *Bac. Abr., Statute* (*a.*)

*By the court,* RINGO C. J. The whole proceeding is based upon, and in every essential part appears to be in conformity with the following enactments of the legislature, viz: Section 1. That any circuit court in this State, wherein any judment may have been obtained upon a forfeited delivery bond, which, under the decisions of the supreme court of this State, is erroneous and liable to reversal, shall at any time, upon the mere motion of the plaintiff, and without any notice to the defendant, recall and enter judgment of revocatur upon such judgment with the same effect as if the plaintiff had proceeded by writ of error in the nature of error, *coram nobis* to have the same recalled. Sec. 2. In all cases where any delivery bond has been heretofore taken and forfeited, and no judgment entered thereon, the plaintiff may, on motion, and twenty days notice to the obligors in such bond, without any declaration or formal pleading, obtain judgment on such bond; which judgment shall be entered in the same manner as judgments on penal bonds, the court ascertaining the damages, and on any delivery bond, the judgment whereon has been or may be recalled, the plaintiff may obtain judgment in like manner and without notice. The question therefore, is boldly presented, whether the legislature possesses authority to authorize the circuit court to readjudicate, revise, and reverse its own judgment pronounced in the manner prescribed by this enactment? In the distribution of the ju-

Byrd et al. *vs.* Brown et al.

dicial power of this state, it appears to have been the design of the constitution to vest in this court exclusively, the power to adjudicate upon, revise, and annul the judgments and decrees of the circuit court. This conclusion is, in our opinion, irresistable upon a careful examination of the organization of the whole judicial department of the government, and a comparison of the powers with which each tribunal is clothed; from which, it will be perceived, that all those inferior to this court, from the lowest to the highest, are invested principally with original jurisdiction of such subject matters or cases as are assigned to them respectively, while, except in a very few instances otherwise expressly directed, this court is clothed with appellate jurisdiction only, co-extensive with the State, and that original cognizance of almost every conceivable case, which can possibly arise under our laws and jurisprudence, is by the constitution expressly given to some one of the tribunals inferior to this court. Thus proving the design of the constitution, to parcel out nearly the whole original jurisdiction to the inferior tribunals, leaving the law and the legislature to determine whether this jurisdiction shall be directly exercised upon the adjudications of the tribunals inferior to the circuit court, or whether the cases so adjudged, shall in any manner prescribed by law, first pass therefrom to some other tribunal of higher grade, and be by it adjudged, before the appellate power of this court shall be exercised: and thus a proceeding instituted in the lowest, may, according to the will of the legislature, be required by law to pass through and be adjudicated by every intermediate tribunal, or any number of them, before it can reach this court and be adjudicated and revised by it. But when a readjudication is demanded, it must be the adjudication of some tribunal other than that in which it was previously decided, and superior to it, according to the spirit and design of the constitution, clearly indicated by the organization of this department; and if there be none such, or none authorized by law to take cognizance of it, the jurisdiction of this court immediately attaches, and in one form or another, may be exercised over it, by virtue of authority expressly derived from the constitution. Which jurisdiction, the legislature possesses no power to impair or divest; consequently, as there is no intermediate authority

90

between this and the circuit court, matters of law determined by the latter, when its authority over the judgment is once determined, become conclusive as to the court and parties, and, except by the ad-judication and re-vision of this court, can never be annulled or set aside. Because, by giving this court appellate authority in all cases co-extensive with the State, it seems to us to follow, as a necessary consequence, that the authority of this court embraces every case up-on which any inferior tribunal has pronounced judgment, whenever its power over the judgment ceases, if not before: and the judgment thus vested in this court by the constitution, the legislature possesses no power to abridge or take away. This, the enactment in question, attempts indirectly to do, by vesting in the circuit court a portion of the jurisdiction vested exclusively in this court by the constitution. If this court can be thus superseded in the exercise of any portion of its constitutional jurisdiction, the same power may, if it so wills, divest it of the whole, by simply providing for its exercise by the circuit or other inferior courts, in giving to them respectively, power at any time to review, readjudicate, revise, and affirm or reverse their judgments of law previously pronounced upon a bare inspection of the record. But the enactment in question, does not stop at this: it not only super-sedes this court in the exercise of a portion of its rightful authority, but authorizes and requires the circuit court "at any time, on the mere motion of the plaintiff, and without any notice to the defendant," in a certain class of cases in which the judgment given, according to the opinion and decision of this court pronounced in some other case between other parties, is erroneous and liable to be reversed, to "re-call and enter judgment of revocatur upon such judgment;" thus as-suming to give to the circuit court, power to decide matters of which this court, under the constitution, had the sole cognizance, by requi-ring it to decide, first, that its former judgment is, under the decisions of this court, erroneous and liable to reversal, and then, to revoke and annul it; thereby, in such case, investing it with an authority, and re-quiring of it the performance of a duty, which can appropriately be-long to, and be exercised by an appellate tribunal only; and then, on the like motion of the plaintiff, and without notice to the defendant, requires the court to proceed to give judgment for the former against

the latter, on the delivery bond which was the foundation of the former judgment so recalled and revoked: thus, at the same time invading and taking from this court so much of its constitutional authority, and wholly disregarding the rights of the defendant throughout the proceeding, and suffering them without his knowledge, under the guise of judicial sanctity and power to be wantonly and capriciously sported away at the will of the plaintiff. Yet, notwithstanding the injustice which might be inflicted on the defendants under its provisions, we should hesitate to decide it inoperative, if its provisions were not in conflict with some constitutional or other law of superior obligation. But for the reasons assigned, we are clearly of the opinion, that so much of the first section of said enactment as authorizes the circuit court to readjudicate questions of law previously decided by it, and therefore recall and revoke its judgment previously pronounced, and over which its power had ceased, is in conflict with, and repugnant to the provisions contained in the VI article of the constitution of this State and void. And for this reason, the judgment of revocatur pronounced in this case, by virtue and in pursuance of said unconstitutional provisions in said act contained, is erroneous and must be reversed. And the last judgment, founded upon the delivery bond, pronounced in this case upon the supposed revocation of the former judgment thereon, being without notice, and in this respect dependant upon the judgment of revocation, without which no such judgment could be given (if indeed it could be authorized in any case, a question upon which we express no opinion) is also erroneous, and must be reversed, annulled and set aside with costs: and the case be remanded with instructions to that court to dismiss the former motion for want of jurisdiction; and proceed upon the latter in a manner consistent with law, and not inconsistent with this opinion.

*Fowler,* for plaintiff in error, filed the following petition for reconsideration.

The plaintiffs in error, respectfully ask for a reconsideration of this case.

It is insisted, that the writ of error extends to the first judgment rendered on the delivery bond, and that the court should have reversed

it, by which the others would have necessarily fallen with it. Both judgments are between the 'same parties; and as the first in point of time is clearly erroneous, and the foundation for the other, and not barred by the statute of limitations, by legal intendment the writ must reach it, and be reversed, or the plaintiff's have obtained no redress by their writ. The first judgment, by the decision of the court, is left in full force against him, and by being suspended by the court under advisement since the last term, the plaintiff's are now barred by the statute of limitation, from bringing their writ of error to reverse it. That that judgment is clearly erroneous, the authorities referred to in their brief, clearly establish: in addition to which, is precisely in point the case of *McKnight et al. vs. Smith*, decided at the last term of this court.

If the court did not reverse that judgment, because it is clearly void upon its face, the plaintiff's insist that it should be superseded, and respectfully ask that upon the transcript filed, the court award in their behalf a perpetual supersedeas to said first judgment. There was no notice whatever to the parties, nor was there any declaration or motion or writ issued; consequently, it is a nullity, and should be superseded. See 3 *Ark. Rep.* 525. *James C. Woods, ex parte.*

*By the court,* RINGO C. J. The plaintiff's in error, on a petition in writing filed, have moved the court to reconsider its opinion, and set aside the judgment pronounced in this case at a former day of the present term; because said opinion and judgment do not embrace the original judgment on the delivery bond; but simply the judgment of the circuit court, revoking and setting aside said original judgment, and the judgment thereupon entered anew on said delivery bond, the question thus presented makes it proper for us to state, that the writ of error by virtue of which the case has been brought before, and adjudicated by this court, only brings before the court the record, proceedings, and judgment "on judgment of revocation and judgment anew on delivery bond," and expressly confines the complaint of the plaintiff's, and the adjudication of this court thereupon, to said judgments of revocation and anew upon the delivery bond: and although the first, or original judgment on the delivery bond, is con-

tained in the transcript of the record, certified and returned with the writ of error to this court, it is so inserted improperly and without any legal authority, and forms no part of the record of the case brought before this court, by the present writ of error: and of course, this court has not, by virtue of this writ, obtained any jurisdiction thereof, and cannot legally adjudicate and reverse it; nor can the fact of the statute of limitations having run against the plaintiff's, (if indeed they are bound thereby,) so that they cannot, upon another writ of error for this purpose sued out, obtain an adjudication and revision thereof by this court, have the slightest influence upon the present question. And if the plaintiff's are even concluded thereby, they have no right to complain, because the injury, if any, arises from their own laches or default: for surely, if they were aggrieved by said first original judgment, they have had ample time and opportunity to have brought it before this court for revision within the term prescribed by law, and there does not appear to have been any legal impediment at any time to prevent them from so doing.    *Motion denied.*