(116 App. Div. 818)

### GRIDER et al. v. CORBIN et al.

(Supreme Court. Appellate Division, Second Department. January 18, 1907.)

**1. JUDGMENT—RES JUDICATA—DISMISSAL OF CROSS-BILL.**

A judgment creditor sued his debtor and a codefendant to set aside a deed of trust executed by the debtor to the codefendant. The debtor filed a cross-bill, bringing in a third person as a party defendant, and alleged that the deed of trust held by the third person was void for usury exacted by the codefendant. Another allegation of the cross-bill related to a note of $1,500 payable to the codefendant, which was given subsequent to the other transactions in the suit, and which was disconnected therefrom. *Held*, that the dismissal of the cross-bill on the issue raised by the answer of the third person putting in issue the allegations thereof did not bar an action on the note for $1,500.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1105.]

**2. SAME—ACTION ON FOREIGN JUDGMENT—RECORD.**

In an action on a foreign judgment purporting to have been entered nunc pro tunc as an amendment of a former judgment, the judgment sued on was proved by the exemplified copy of the record which showed that the former judgment as entered was signed by the judge. *Held*, that the former judgment could not be treated as entered by mistake of the clerk so as to authorize the amendment, for to do so would deny the foreign judgment the faith and credit to which it is entitled.

**3. EQUITY—SUIT AGAINST SEVERAL DEFENDANTS—DEFAULT DECREE AGAINST NONANSWERING DEFENDANT.**

That one of several defendants in a suit in equity makes default does not necessitate a decree against him, where an answer of a codefendant goes to the whole bill and puts plaintiff to his proof, and, on it being shown that he is not entitled to relief, he is not entitled to a decree against the defaulting defendant.

**4. JUDGMENT—FOREIGN JUDGMENT—VALIDITY—ACTION ON.**

A judgment creditor sued, in the circuit court of Arkansas, his debtor and a codefendant to set aside a deed of trust executed by the debtor to the codefendant. The debtor filed a cross-bill, bringing in a third person as a party defendant, and alleged that the third person held the deed of trust which was void because of usury exacted by the codefendant. In 1894 the court dismissed the cross-bill, which judgment was affirmed on appeal. In 1899, after the death of the codefendant, the court of chancery, having been given the jurisdiction in equity theretofore exercised by the circuit court, directed ex parte the entry of a judgment nunc pro tunc against the codefendant. The suit against the codefendant was not revived in the manner prescribed by Sand. & H. Dig. Ark. § 5935. *Held*, that as under the law of Arkansas the judgment of the chancery court was void for want of jurisdiction of the subject-matter and of the parties, and no action could be maintained thereon.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1458–1481.]

Appeal from Special Term, Suffolk County.

Action by William H. Grider and another against Hannah M. Corbin and others, executors of Austin Corbin, deceased. From a judgment for defendants, plaintiffs appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, and MILLER, JJ.

Edward J. Patterson (Charles T. Coleman, on the brief), for appellants.

George C. Austin, for respondents.

MILLER, J. ' The plaintiffs appeal from a judgment entered on the report of a referee in a suit on a judgment of the state of Arkansas. The judgment sued on is attacked for want of jurisdiction, and the judgment appealed from cannot be sustained unless the defendants have negatived every supposable fact which would have authorized the exercise of jurisdiction by the court that rendered said Arkansas judgment. In 1892 an action was brought in the circuit court of said state by a judgment creditor of the plaintiffs' assignor, one Lanier, against said Lanier, the members of the Corbin Banking Company, a copartnership of which the defendants' testator was a member, and other defendants, praying that certain trust deeds executed by said Lanier to the said Corbin Banking Company be adjudged void, or at least subordinated to the lien of the plaintiff's judgment. Said Lanier filed a cross-bill, bringing in the Union Mortgage & Trust Company, a London corporation, as an additional defendant, and alleged that the notes in suit, aggregating $41,792.84, together with the trust deeds given to secure their payment, held by said Union Mortgage & Trust Company, were void for usury·exacted by said Corbin Banking Company, and were given in part settlement of an account between said Lanier and said Corbin Banking Company which contained fraudulent charges and suppression of credits, and judgment was prayed against the defendants for the sum of $25,000, and for an adjudication that said securities were void. One of the allegations of said cross-bill related to a note of $1,500, payable to the defendants' testator, which was given subsequent to all of the other transactions in suit, was entirely disconnected therefrom, and did not concern the other parties. The defendants' testator demurred to the cross-bill on the ground of the pendency of another action. The demurrer was sustained with leave, however, to discontinue said former action, and said action was discontinued. The said Union Mortgage & Trust Company, the holder of all the securities, except said note of $1,500, held by the defendants' testator, answered said cross-bill, putting in issue all its allegations and asking for the foreclosure of said trust deeds. The attorney of the members of said Corbin Banking Company was also the attorney of said Union Mortgage & Trust Company, but the former did not plead to said cross-bill, except as aforesaid. The trial of the issues raised by the answer of said Union Mortgage & Trust Company at the May, 1894, term of the circuit court, a court exercising concurrent jurisdiction in law and equity, resulted in a judgment of said court which recited the appearance of all parties by their attorney, dismissed the cross-bill of the plaintiffs' assignor, and decreed a foreclosure of said trust deeds held by said Union Mortgage & Trust Company. Among other things, the court found that the notes in suit were executed by said Lanier in consideration of the nominal amount thereof loaned to him, and that he was indebted to the said Corbin Banking Company in the sum

with which he was charged in the account alleged to be false and fraudulent. On appeal taken by said Lanier, said judgment was in all things affirmed by the Supreme Court in April, 1897, and a motion for rehearing was denied by said court in November, 1897. Two exhaustive opinions were written in the Supreme Court, a prevailing opinion in support of the judgment, and a dissenting opinion in favor of a judgment reversing the decree, adjudging the securities void for usury, and directing a judgment for the sum of $17,722.46 by default against the members of the Corbin Banking Company. The plaintiffs' testator died June 4, 1896. In 1897 an act was passed creating the chancery court of the state of Arkansas, and conferring upon that court jurisdiction in equity theretofore exercised by the circuit court. The May, 1894, term of the circuit court was held by Judge Riddick, who appears to have signed the judgment rendered at that time. In November, 1899, the chancery court, presided over by Chancellor Robertson, directed ex parte the entry of a judgment nunc pro tunc as of the 9th day of May, 1894, against the members of the said Corbin Banking Company for the sum of $19,400.74, and this is the judgment sued on. It was rendered upon the same record as that upon which the circuit court in May, 1894, had dismissed said cross-bill. It recited the appearance of said defendants by their attorney, but it is undisputed that said attorney did not appear on said application, and, of course, the death of his clients terminated his authority to represent them. Said judgment also contains the following recital:

"The court doth further find that this cause was argued and submitted at the May term, 1894, of this court and by the court taken under advisement and that since said time the defendants Austin Corbin and W. G. Wheeler have died."

Each side seeks to support its contention by resort to the statutes and decisions of the state of Arkansas, which are in evidence. The defendants assert that the chancery court did not have jurisdiction either of the parties or of the subject-matter, while the plaintiffs claim that the judgment of the circuit court only related to the defendants who had answered; that by misprision of the clerk a judgment generally dismissing the cross-bill was entered, whereas the dismissal should have been confined to the defendant Union Mortgage & Trust Company; that the judgment of the Supreme Court only related to the parties to the appeal, and that, in any event, the issue raised by the allegation of said cross-bill relating to the $1,500 note was not adjudicated upon, but remained pending and undetermined in said court; and that as the chancery court, the successor to the circuit court, had jurisdiction of said subject, the judgment which it rendered cannot be attacked collaterally. It may be granted that we are to determine the jurisdiction of the court by the law of the state of Arkansas at the time of the exercise of such jurisdiction.

The referee has found that the questions presented by the allegations in respect of said $1,500 note remained pending and undetermined before said circuit court, and thereafter before said chancery court up to and including the time of the rendering of the judgment

sued upon. Although this is found as a fact, it is clearly a conclusion as to the legal effect of the judgment of the circuit court; and, if such conclusion is unsound, it may be disregarded by us. The judgment of the circuit court in terms dismisses the cross-bill of the said Lanier. Such dismissal is not limited to the allegations respecting the notes and securities held by said Union Mortgage & Trust Company, nor is it limited to said defendant. It is unquestioned that the whole matter was before the court that rendered said judgment. No matter if that court should have granted judgment by default against the defendants who had not answered, it did not do so, but dismissed said cross-bill generally, as it had the power to do. Said finding of the learned referee is doubtless based upon an expression in the prevailing opinion of the Supreme Court to the effect that no adjudication or judgment was rendered by the circuit court respecting said $1,500 note; that it was entirely disconnected from, independent of, and subsequent to the other notes, and payable and belonging to a different party; and that no question respecting it was before the court. This did not mean that the question was still pending in the circuit court. It meant that the dismissal of the cross-bill did not bar another action on said $1,500 note, the issue respecting which did not concern the other parties to the suit.

It is also claimed by the appellant that the only proof respecting the 1894 judgment relates to the judgment as entered by the clerk, and that, for the purpose of supporting the jurisdiction of the court now attacked, we must suppose, in the absence of proof to the contrary, that the judgment as pronounced by the court simply dismissed the cross-bill as to the defendant Union Mortgage & Trust Company, and that by misprision of the clerk it was entered as a dismissal generally, but the difficulty with this contention is that the judgment as entered purports to have been signed by the judge, and the record, in the absence of anything to impeach it, proves the judgment. The judgment sued upon is proven by the exemplified copy of the record. To deny to such a record the probative force, to which it is entitled, is in effect to deny the judgment the faith and credit which the appellants assert we are bound to give the judgment in suit. The fact that one of several defendants in an equity suit makes default does not necessitate a judgment against him. An answer of a codefendant going to the whole bill puts the plaintiff to his proof, and, if it is not shown that he is is entitled to relief, he is not entitled to judgment even against the defendant in default. This question is discussed and the rule fully recognized by the Supreme Court of Arkansas in a case in which there had been an interlocutory judgment by default against one of several defendants, and it was held that such interlocutory judgment must abide the result of the final decree. Aikin v. Harrington, 12 Ark. 391. The question whether the answer of the Union Mortgage & Trust Company went to the entire equity of Lanier's cross-bill and whether he was entitled to judgment against the members of the Corbin Banking Company, irrespective of the defense of the said Union Mortgage & Trust Company, was before the circuit court at the May, 1894, term. That court had jurisdiction of the par-

ties and of the subject-matter, and it pronounced a judgment, which was entered by the clerk, dismissing the cross-bill. The parties appear to have treated the answer of said Union Mortgage & Trust Company as available to the Corbin Banking Company. The defendants' testator was required to answer the interrogatories attached to the cross-bill by an order providing that for failure to answer said interrogatories within 90 days the cross-bill should be taken as confessed. In his brief before the Supreme Court the appellants' counsel urged that the chancellor erred in not having an account taken between Lanier and said Corbin Banking Company, claimed that there were other questions in the case besides the question of usury, and asked that the cause be remanded to the circuit court for the purpose of having said account taken and stated, and the prevailing opinion of the Supreme Court discussed the question whether the notes were tainted with usury and whether the account as settled between said Lanier and the Corbin Banking Company was open to correction. As to the latter proposition, the court said that the settlement of the account could not be opened except upon proof of fraud or mistake, and that there was no such proof. The judgments of the circuit and supreme courts in effect adjudged that said Lanier was not entitled to a judgment in that action against the members of the Corbin Banking Company; and apparently no one dreamed either that the judgment as pronounced by the circuit court was erroneously entered by the clerk or that any issue remained pending and undetermined in said court after it had pronounced said judgment until five years had elapsed, during which time the judge before whom the case was tried had been elevated to the Supreme Court, the jurisdiction in equity of the circuit court had been transferred to a new court of chancery created by statute, the judgment had been in all things affirmed by the Supreme Court and a rehearing denied, and two of the defendants had died.

As the parties evidently supposed at the time, and as the foregoing recital doubtless leads us all to expect, the decisions of the state of Arkansas conclusively show that according to the law of that state the judgment of May, 1894, was final and conclusive until reversed on appeal. The appellants argue that the judgment in suit was an amendment of the judgment of May, 1894, and that the court rendering it had jurisdiction to correct and amend its former judgments or decrees. Said judgment does not purport to be an amendment of a former judgment. On the contrary, it purports simply to adjudicate differently on the same record. The judgment of 1894 dismissed the cross-bill. The judgment of 1899 granted a portion of the relief prayed for by said cross-bill. That was not an amendment or correction of a former judgment. So far as it related to the same matter, it was a reversal of the former judgment, and the authorities relied upon by the appellants do not sustain such exercise of jurisdiction. Those authorities are Rogers v. Brooks, 31 Ark. 194, Freeman v. Mears, 35 Ark. 278, and Portis v. Talbot, 33 Ark. 218. The first two cases simply held that upon an affirmance in the Supreme Court of a decree for money the decree goes against the

sureties on the appeal bond as of course, and that, if the clerk omit to enter the judgment against such sureties, that may be done by amendment nunc pro tunc; and the last case cited simply held that an error in the entry of judgment clearly shown by other parts of the record could be corrected after the term. Each of said cases dealt with a clerical misprision. There is no doubt of the power of the court to amend a judgment as entered so as to make it conform to the judgment as rendered. King & Houston v. State Bank, 9 Ark. 185, 47 Am. Dec. 739, and King v. Clay, 34 Ark. 291, are authorities in support of the exercise of such jurisdiction. The appellants also cite upon this point the case of Canadian, etc., Co. v. Clarita, etc., Co., 140 Cal. 672, 74 Pac. 301. If that case held the proposition contended for, it would be in conflict with the decisions of the state of Arkansas. as we shall see, but it simply decided that the court has power to amend a judgment erroneously entered by the clerk so as to make it conform to the judgment directed by the court, and fully recognized the doctrine that for judicial errors the remedy is an appeal.

While fully recognizing the power of the courts over the record of their own judgments and the right to correct such record so as to make it speak the truth and conform to the judgment actually rendered, the courts of Arkansas by an unbroken line of authorities have settled the law of that state in harmony with the rule, which almost universally prevails, that a judgment once pronounced becomes final and conclusive between the parties, unless corrected or reversed on appeal. In Smith v. Stinnett, 1 Ark. 497, it was held that an order setting aside a final judgment by default made at a term subsequent to the one at which such judgment was rendered was wholly illegal and without influence to overthrow such judgment. This was placed upon the ground that, the term at which the judgment was rendered having ended, the court lost jurisdiction. In the case of Mayor v. Bul'ock, 6 Ark. 282, it was held that the parties could not even by consent confer jurisdiction to set aside a default judgment rendered at a former term of the court. In Walker v. Jefferson, 5 Ark. 23, it was held that after the expiration of the term at which a rule for a new trial was to be heard the court lost control of the cause, and that it could not thereafter set aside a new trial previously granted, enter a nolle prosequi as to two defendants, and render judgment against the others. In Smith v. Dudley, 2 Ark. 60, the plaintiff obtained an order reciting the loss or destruction of a judgment rendered at a previous term and directing that it be reinstated on the records of the court, and it was held that the judgment so entered was void for want of jurisdiction, that decision was put upon the ground that the original judgment could not be proven by parol, and that the judgment directed to be entered must be treated as rendered at a term after the court had lost jurisdiction of the cause. In Ashley v. Hyde, 6 Ark. 100, 42 Am. Dec. 685, the Supreme Court held that even it did not have jurisdiction, after the expiration of a term at which a judgment was pronounced, to set it aside on a petition for a rehearing, and that its proceedings in undertaking to do that were extrajudicial, mere nullities, saying:

"But the power of a court to vacate or annul its judgments and decrees rendered at a previous term presents a question of more serious doubt. It is not pretended that the circuit court or other inferior tribunals possess such power, but we believe it is conceded that, their judgments being rendered and the term having expired, the power of the court over them is forever gone, except so far as may be necessary to supply omissions through mistake or neglect by nunc pro tunc orders."

In Byrd et al. v. Brown et al., 5 Ark. 709, it was held that the statute authorizing the circuit court to recall judgments upon forfeited delivery bonds and enter a judgment of revocation was unconstitutional, as interfering with the exclusive appellate jurisdiction of the Supreme Court. The propositions stated supra are reiterated in Greer v. State Bank, 10 Ark. 455, Biscoe v. Sandefur, 14 Ark. 568, Brady v. Hamlett, 33 Ark. 105, and in many other cases which might be cited, all holding that the proceedings at a term of court subsequent to that at which the judgment was rendered are coram non judice. Many of these decisions go much further than is necessary to establish the want of jurisdiction in the court after the May, 1894, term, to vacate, annul, or reverse the judgment then rendered.

But it is said that the referee has found that according to the law of Arkansas the circuit court in the exercise of its power of amendment has the power to make a new order virtually reversing the judgment corrected. It is plain that these findings of the referee refer to the power of the court to correct or amend the record, and not to its power to change the judgment pronounced. Power to change the record is one thing; power to change the judgment actually rendered, quite a different thing. Treating the record as proof of the judgment pronounced, as we must for the reasons stated supra, it is plain that according to the law of Arkansas the circuit court upon the expiration of the term at which the judgment of May, 1894, was rendered lost jurisdiction of the subject-matter of that suit, and we think it clear that the chancery court in 1899 did not have jurisdiction either of the subject-matter or of the parties.

The plaintiffs' testator had then been dead three years. No attempt was made to revive the action against his personal representatives, doubtless for the reason that the statutes of Arkansas prohibit such an application without the consent of such representatives, unless made within one year from the time it could have first been made. Sand. & H. Dig. St. Ark. § 5935. In the case of the State Fair Ass'n v. Townsend, 69 Ark. 215, 63 S. W. 65, an appeal was dismissed for failure to revive the action within a year after it could have been received. But the appellants rely upon the finding of the referee to the effect that according to the law of Arkansas, "where a cause is submitted to a court for its determination during the lifetime of all of the parties and after such submission and before decision a party dies, the court has power upon its own motion to render judgment nunc pro tunc as of a day prior to the death of such party." It is undoubted that such practice was warranted by the common law of England which was adopted as a part of the common law of Arkansas, and that the power of courts to render judgments nunc pro tunc as of a day prior to the death of a party has been

recognized in our own jurisdiction (see Bergen v. Wyckoff, 84 N. Y. 659), but this power is exercised only to prevent a failure of justice where the delay is solely attributable to the court. The Arkansas authorities cited by the appellants clearly recognize said limitation upon the court's power (see Pool v. Loomis, 5 Ark. 110; Samuel v. Cravens, 10 Ark. 381); and in the case of Jennings v. Ashley, 5 Ark. 128, also cited by the appellants upon this proposition, it was held that judgment could not be entered nunc pro tunc where a party had died before submission of the case, even though after interlocutory judgment if a writ of inquiry was necessary. In the case at bar the jurisdiction of the court to render the nunc pro tunc judgment after the death of the party is sought to be supported by the recital in the judgment that the cause was argued and submitted at the May term, 1894, and by the court taken under advisement. This recital is contradicted by the preliminary recital, to wit:

"On this day comes F. R. Lanier * * * and this cause comes on for final hearing on the cross-bill and exhibits and the depositions of said Lanier," etc.

It is also disproved by the judgment of May, 1894, which shows that, instead of taking the case under advisement, the court dismissed the cross-bill. It is also inconsistent with the position taken by the appellants that the questions respecting the Corbin Banking Company raised by Lanier's cross-bill remained pending and undetermined. If the question was submitted to the circuit court at said May term, it was decided adversely to Lanier. If it was not submitted to said court, but remained pending and undetermined, it came before the chancery court as an original question, and it is quite plain that it was so treated by said court. Thus considered the chancery court had no jurisdiction of the parties except the action were revived against the personal representatives of the deceased party. And, if absolute verity is accorded the recitals of the judgment sued on, the appellants are in no better situation, because, if it is true that the cause was submitted to and taken under advisement by Judge Riddick in May, 1894, Judge Robertson could not render a judgment in 1899 upon said submission, but a mistrial resulted upon Judge Riddick's ceasing to be a circuit judge. Thus the appellants are in the position of having to depend upon a recital which, if true, establishes the want of jurisdiction in the court to render the judgment sued on.

It may be conceded, as argued by the appellants, that the judgment cannot be attacked collaterally for irregularities, but it is only conclusive upon the general question involved in the action or proceeding concerning which the court had the power to adjudge. Hunt v. Hunt, 72 N. Y. 217, 28 Am. Rep. 129; Smith v. Central Trust Co., 154 N. Y. 333, 48 N. E. 553. The court rendering the judgment in suit had no jurisdiction to adjudicate upon the general question involved in the action. Its attempted exercise of power was, therefore, a nullity, and the judgment rendered does not import verity even respecting the recitals of fact which go to the question of jurisdiction. Thompson v. Whitman, 18 Wall. (U. S.) 457, 21 L. Ed. 897.

The judgment should be affirmed, with costs. All concur.