■ NORMAN B. OPPENHEIMER, Appellant, v JEFFREY P. WESTCOTT et al., Defendants, HANCOCK SECURITIES CORPORATION, Respondent-Appellant, and HAROLD P. BERNSTEIN et al., Intervenors-Respondents-Appellant.—Order of the Supreme Court, New York County, entered on June 24, 1977, which vacated a "judgment entered herein as it pertains to defendant Hancock * * * on June 28, 1971, in the amounts only which were determined upon an inquest held before the Court on June 25, 1977 (Hon. Darwin Telesford, presiding)", vacated and set aside that inquest, directed that plaintiff's damages against defendant Hancock be reassessed at a new inquest, directed that such reassessment of plaintiff's damages be limited to the causes of action against Hancock "severed at the trial [of another defendant] and upon which no determination was made except as to the fourth and fifth causes of action" in this action, and in all other respects denied the motions "without prejudice to their renewal at such time as the inquest has been completed", modified, on the facts and in the exercise of discretion, to reverse so much of the order entered on June 24, 1977 that vacated the judgment of June 28, 1971 and the inquest on which it was based and ordered a new inquest, and otherwise affirmed, without costs and without prejudice to any application defendants are advised to make in the pending action of *Oppenheimer v Bernstein* to attack the judgment of June 28, 1971. The default of defendant Hancock was admittedly intentional. In the absence of an adequate excuse therefor and a clear demonstration of underlying fraud in the obtaining of the default judgment, proof of which is lacking here, vacatur of that judgment by the order of June 24, 1977 was an improper exercise of discretion. We note that subsequent to obtaining the default judgment against Hancock, plaintiff, in attempting to collect upon

the judgment, instituted suit against Harold Bernstein, Raymond Bernstein and others charging them with defrauding Hancock's creditors by looting Hancock of its assets; that it was in an effort to defeat the suit against the Bernsteins that the present motion to vacate the default judgment against Hancock was made by the Bernsteins, on the ground that they were "interested" persons seeking vacatur of a judgment procured by fraud (CPLR 5015). They also moved to intervene in the original suit (CPLR 1012, subd [a]; 1013). While not presently requested by any of the parties to this appeal we would note that our ruling herein is without prejudice to any application by defendants in the second lawsuit to plead in their answer in that action, as defenses, the claims presently urged in their attempt to vacate the default judgment (see *Fuhrmann v Fanroth*, 254 NY 479, 482-483; see, also, 5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.13). Concur—Kupferman, Birns, Evans and Sullivan, JJ.; Murphy, P. J., dissents in the following memorandum: CPLR 5015 (subd [a], par 3) reads as follows: "(a) On motion. The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of: * * * 3. fraud, misrepresentation or other misconduct of an adverse party". This court has inherent power in the exercise of its control over judgments to open them upon the application of any one for sufficient reason in the furtherance of justice. This court will consider any application to correct, modify or set aside a final order or judgment where it appears, for sufficient reasons, that substantial justice be subserved by such judgment and that person's rights be injuriously affected thereby, even though such persons be nonparties to the proceeding. *(Bardach v Mayfair-Flushing Corp.,* 49 Misc 2d 380, 383, affd 26 AD2d 620.)* To seek relief from a judgment or order, all that is necessary is that some legitimate interest of the moving party will be served and that judicial assistance will avoid injustice (5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.15, p 50-252). As will be developed below, the Bernstein defendants are "interested" persons since they are being sued upon a judgment that was entered upon a fraudulent and otherwise deficient inquest. Therefore, I would grant them permission to intervene in this proceeding (CPLR 1013). Historically, the courts recognized a difference between "intrinsic" and "extrinsic" fraud. Collateral attack could not be made upon a judgment for intrinsic fraud, such as perjury or false swearing at a trial *(Tomasello Bros. v Friedman,* 57 Misc 2d 817, affd 32 AD2d 652; 9 Carmody-Wait 2d, NY Civ Prac, Judgments, § 63:165). A judgment could only be attacked in an independent action when there was so-called extrinsic fraud, which is not alleged to exist in this proceeding. (5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.13.) Today, the very broad terms of CPLR 5015 (subd [a], par 3) have rendered the independent action obsolete in all but a few peculiar situations (5 Weinstein-Korn-Miller, NY Civ Prac, par 5015.13, p 50-245). In any event, since defendant Hancock and the Bernstein defendants demonstrated that the plaintiff made several factually incorrect statements to the inquest court, movants should have been permitted to challenge the judgment directly in this proceeding. The inquest covers seven pages of testimony. The inquest court permitted the plaintiff to recover $122,500 for 70,000 shares of Micronetic stock that had been pledged as collateral. The evidence in the record suggests that plaintiff did not own any more than 11,334 shares of that stock. In fact, plaintiff does not presently claim that he owned 70,000 shares of stock. Moreover, plaintiff never even asserted a specific claim for the 70,000 shares in the causes of action against Hancock. Hence the movants have made a prima facie showing of fraud on

plaintiff's part. The plaintiff also recovered $56,827.50 for Hancock's failure to purchase 12,500 shares of Micronetic. This was apparently the full purchase price of the shares under the contract. Even assuming that Hancock had breached the contract, this sum would not be the proper measure of damages for Hancock's failure to purchase the stock on a particular day. (See, generally, 13 NY Jur, Damages, § 110.) Finally it should be observed that the Micronetic stock might well have been valueless on the proposed date of sale since that firm was then in severe financial difficulties. It should also be stressed that the inquest was conducted in a very perfunctory and superficial manner. The plaintiff did not make an evidentiary showing of damages; he merely made a series of conclusory statements as to his losses. If for no other reason, the interests of justice demand that a new inquest be held to fix damages on an evidentiary basis. (*Wine Antiques v St. Paul Fire & Mar. Ins. Co.,* 40 AD2d 657.) While ordering a new inquest, I would not dismiss any causes against Hancock nor would I permit Hancock to avoid liability because the causes were dismissed on the merits as against Vilas and Hickey (Vilas). In that regard, the fourth and fifth causes were improperly dismissed against Hancock. In the eighth and ninth causes, the plaintiff maintained that Vilas had published the false and defamatory letters of Wescott and Hancock by sending them to Rosenthal. Justice Quinn dismissed those causes because there was no proof of publication to Rosenthal. The fourth and fifth causes did not hinge on the publication of those letters to Rosenthal. Those causes depended for their vitality on whether the two letters were defamatory in themselves. Therefore, Special Term did not correctly dismiss the fourth and fifth causes. Likewise, the dismissal of the seventh, tenth and twelfth causes against Vilas do not inure to the movants' benefit. (See *Grider v Corbin,* 116 App Div 818, 823, affd 194 NY 517.) In particular, it should be observed that the twelfth cause was dismissed against Vilas because there was no proof it had entered into a conspiracy with the other defendants against the plaintiff. That dismissal did not preclude the possibility that Hancock was engaged in a conspiracy with defendants other than Vilas. In any event, the trial minutes reveal that the court, in dismissing the five causes against Vilas, recognized the viability of the default plaintiff had taken against Hancock for breach of contract. Consequently, movants may not properly challenge the liability imposed upon Hancock. Accordingly, I would modify the order of the Supreme Court, New York County, entered June 24, 1977, by vacating so much thereof as dismissed the fourth and fifth causes and as denied the Bernstein defendants the right to intervene, by reinstating the fourth and fifth causes and by granting the Bernstein defendants the right to intervene, and, as modified, I would otherwise affirm.